IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MARTIN ONASSIS GOODSON,        §
                               §
                Plaintiff,     §
                               §
v.                             §        No. 3:25-cv-816-K (BT)
                               §
CITY OF DALLAS, et al.         §
                               §
                Defendants.    §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are *pro se* plaintiff Martin Onassis Goodson's complaint (ECF No. 3), amended complaint (ECF No. 16), and motions (ECF Nos. 6, 7, 8, 14, 25, 29, 30, 31, 32, 33, 34, 36-45, 49). For the reasons below, the Court should dismiss Goodson's federal claims that imply the invalidity of his state criminal conviction with prejudice to their being asserted again until the conditions in *Heck v. Humphrey*, 512 U.S. 477 (1994) are met; dismiss his remaining federal claims with prejudice; dismiss his state-law claims without prejudice to his ability to assert them in state court; and deny his pending motions.

## Background

Goodson filed his original complaint on April 3, 2025. Compl. (ECF No. 3). A few days later, he filed an amended, "supplemental" complaint under Federal

Rule of Civil Procedure 15(a)(1). Amend. Compl. (ECF No. 16). These complaints are the operative pleadings for screening purposes.[1]

In the operative pleadings, Goodson alleges as follows:

In 2018, a Dallas Fire Department (DFD) vehicle ran a red light and struck Goodson's vehicle, knocking Goodson unconscious. Compl. at 4; Amend. Compl. at 11. Goodson was taken to Methodist Hospital. Compl. at 4. When Goodson regained consciousness, he was disoriented and discovered he was naked and handcuffed. Amend. Compl. at 11.

While Goodson was "incapacitated," Dallas Police Department (DPD) officers interrogated him. Amend. Compl. at 12. The officers accused him of

---

[1]Goodson also filed several proposed attachments or supplements to his complaints (ECF Nos. 17-23, 46, 48) without leave of Court and contrary to the Court's explicit instructions not to file such documents without prior court approval. Ord. (ECF No. 11). He also filed a purported second amended complaint (ECF No. 24) without leave of Court and in violation of Federal Rule of Civil Procedure 15(a). The Court does not consider these filings for screening purposes because they were filed in violation of its orders and/or the Federal Rules of Civil Procedure. *See, e.g.*, *Yazdchi v. Am. Honda Fin. Corp.*, 217 F. App'x 299, 304 (5th Cir. 2007) (holding that *pro se* plaintiffs must comply with the rules of civil procedure); *see also* *Mills v. Treasury Retail Sec. Services*, 2023 WL 6245204, at *2 (D. Neb. Sept. 26, 2023) ("Plaintiff subsequently filed five supplements to his Amended Complaint between January 6, 2023, and August 14, 2023. Because these supplemental pleadings were not filed with leave of Court and contrary to the Court's Initial Review Order, the supplements will be stricken from the court file and will not be considered by the Court in conducting its initial review of Plaintiff's Amended Complaint.") (citing FED. R. CIV. P. 15); *see also* *Gibson v. Mackey*, 2024 WL 4906181, at *1, n.1 (N.D. Tex. Oct. 18, 2024) ("Gibson also, without leave of court, filed several documents supplementing or amending his original allegations. ECF Nos. 11, 13, 16, 17, 18, 19, 20, 21. The Court does not consider these documents for screening purposes because Gibson did not move for leave of Court to file them.") (citing FED. R. CIV. P. 15(a)(1)-(2)) (further citation omitted), *rec. accepted* 2024 WL 4906749 (N.D. Tex. Nov. 26, 2024).

murder and driving under the influence of alcohol. Compl. at 4; Amend. Compl. at 14. The officers never advised him of his *Miranda* rights. Amend. Compl. at 15; *see also Miranda v. Arizona*, 384 U.S. 436 (1966). His blood was drawn without his consent, and his blood alcohol level was later used to "build a criminal charge" against him. Amend. Compl. at 15.

After Goodson was interrogated, the hospital allowed DPD officers to take him into custody without "due process" and even though he was bleeding and unable to walk. *Id.* He was discharged from the hospital without his consent and transferred into law enforcement custody without a wheelchair, clothes, or medical clearance. *Id.* at 17. He was never provided with his paperwork, a diagnosis, or the name of the doctor or nurse responsible for his care. *Id.* at 35-36. The hospital did not medically intervene to stop his removal, even though he was discharged prematurely. *Id.* at 18.

After he was discharged from the hospital, Goodson was placed in the Lew Sterrett Jail. Rather than receiving "medical evaluation or effective housing," Goodson was "knowingly" placed into a violent unit where he could not defend himself. *Id.* at 20. Multiple correctional officers expressed concern about Goodson's condition, but their concerns were ignored or overridden. *Id.* at 20-21. No one intervened to help Goodson. *Id.* at 21. For days, he received no medical care, psychiatric evaluation, or reassessment of housing. *Id.*

Because of the vehicle collision, Goodson was charged in state court with intoxication assault with a vehicle. *See id.* at 43. Goodson's original attorney

withdrew from his representation because of a "suspicious claim of conflict of interest." *Id.* at 26-27. This resulted in a calculated, "strategic swap" of counsel, replacing Goodson's competent attorney with a "pit bull" attorney who was constitutionally ineffective and failed to represent his interests. *Id.* at 26, 38. This was all part of a conspiracy to harm Goodson's ability to defend himself. *Id.* at 28.

On June 7, 2019, Goodson pleaded guilty to intoxication assault and received a suspended sentence under which he was placed on community supervision for five years. *Id.* at 41; *The State of Texas v. Martin Goodson*, F-1853869-W, (363rd Jud. Dist. Court, Dallas, Tex., June 7, 2019). The five years of community-supervision was longer than the three years his attorney had promised. Compl. at 4. And upon reviewing his guilty plea paperwork, Goodson discovered that it had been "physically altered" to include a longer community supervision term than he agreed to. Amend. Compl. at 41. Goodson's attorney either oversaw or was "willfully ignorant to this tampering." *Id.* at 42. Further, an individual who testified against Goodson later confirmed that Goodson's attorney told this person not to testify truthfully, "further proving conspiracy to suppress the truth." Compl. at 4.

As Goodson neared the end of his probation, City of Allen police "targeted him for baseless stops—one of which resulted in a cannabis-related reset of his probation." *Id.*

Goodson contends that the conspiracy against him has continued into this litigation, and he charges this Court with engaging in tactics to frustrate his claims. He alleges that the automatic referral of this matter to the undersigned United

4

States Magistrate Judge was a "deliberate tactic to re-route a high stakes civil rights case" and deny him his right to an Article III judge. Amend. Compl. at 45. He alleges that the Clerk's Office tampered with his complaint by "improperly stamping" the document so that the case number read, "3:25-cv-816," without the "federally required" leading zeroes. *Id.* at 49, 51. Goodson claims that this led to "procedural confusion and laid the groundwork for evidence disruption" and supports RICO and civil rights claims. *Id.* at 50.

Based on these allegations, Goodson brings federal and state-law claims against the City of Dallas, the City of Allen, DFD, DPD, Methodist Hospital, unidentified correctional officers at the Lew Sterrett Jail, his court-appointed attorney, and the attorney for the individual who allegedly testified untruthfully against him. Compl. at 3. He seeks monetary and injunctive relief. *Id.* at 8.

## Legal Standards

Goodson proceeds *in forma pauperis* (IFP), so his complaint is subject to screening under 28 U.S.C. § 1915(e)(2)(B). Under that statute, a district court may summarily dismiss a complaint filed IFP if it concludes the action is: (1) frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). To state a claim upon which relief may be granted, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face[,]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level[.]" *Id.* at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is frivolous when it is based on an indisputably meritless legal theory or when the factual contentions are "clearly baseless." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). The latter category encompasses allegations that describe "fanciful, fantastic, and delusional" scenarios, or that "rise to the level of the irrational or the wholly incredible[.]" *Id.* at 33 (citations omitted).

### Analysis

1. Goodson's federal claims stemming from the initial vehicle collision and his subsequent hospital stay are time-barred and substantively meritless.

Goodson claims that a DFD firetruck ran into him in 2018 in violation of his constitutional rights. Amend. Compl. at 12. He alleges that Methodist Hospital violated his constitutional rights by allowing DPD officers to remove him from the hospital after the collision even though he was incapacitated, disregarding his "serious medical condition" during his transfer into custody, and failing to issue his paperwork or medical records. *Id.* at 18.[2]

---

[2] Goodson also claims that Methodist Hospital discharged him before stabilizing him in violation of the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395dd. *Id.* at 18. But EMTALA explicitly provides that no civil action may be brought more than two years after the date the alleged EMTALA violation occurs. *Id.* § 1395dd(d)(2)(C). And tolling is unavailable under EMTALA's limitations period. *See Young v. Scott*, 2022 WL 2240300, at *2 (S.D. Tex. May 18, 2022) (citing *Vogel v. Linde*, 23 F.3d 78, 80 (4th Cir. 1994); *Brewer v. Miami Cty. Hosp.*, 862 F. Supp. 305, 308 (D. Kan. 1994)). Thus, Goodson's

These claims are time-barred. The statute of limitations for a 42 U.S.C. § 1983 action is the same as the statute of limitations in a personal injury action in the state in which the claim accrues. *Wilson v. Garcia*, 471 U.S. 261, 279-280 (1984). In Texas, that period is the two-year statute of limitations for personal injury actions. *Mosley v. Houston Cmty. Coll. Sys.*, 951 F. Supp. 1279, 1288 (S.D. Tex. 1996) (two-year statute of limitations in Tex. Civ. Prac. & Rem. Code § 16.003 applies to § 1983 claim). The statute of limitations begins to run when a claim accrues, which is determined under federal law. *Moore v. McDonald*, 30 F.3d 616, 620-21 (5th Cir. 1994). In the Fifth Circuit, a § 1983 claim generally accrues "when the plaintiff knowns or has reason to know of the injury which is the basis for the action." *Brockman v. Texas Department of Criminal Justice*, 397 F. App'x 18, 22 (5th Cir. 2010) (per curiam).

Here, Goodson does not allege any latent injury, so he knew—or should have known—about his injuries from the DFD vehicle collision and his subsequent medical care at Methodist hospital in 2018, when the collision, and the related treatment, occurred.[3] Yet Goodson did not file this action until April 2025.

---

EMTALA claim is untimely. Goodson also claims that Methodist Hospital violated his rights under the Health Insurance Portability and Accountability Act (HIPAA), but there is no private cause of action under HIPAA, so this claim should be dismissed. *See Acara v. Banks*, 470 F.3d 569, 572 (5th Cir. 2006); Amend. Compl. at 36.

[3] Goodson filed a declaration arguing that he is entitled to equitable tolling on all his claims because, although he had "evidence, knowledge, and motivation to file this case earlier," he was not "in position of legal or personal safety to do so," and feared retaliation, obstruction, and reincarceration. *See* Decl. (ECF No. 28).

Therefore, Goodson's § 1983 claims stemming from the collision with a DFD vehicle and his subsequent medical care at Methodist Hospital should be dismissed as untimely.

Alternatively, these claims are substantively meritless. As for the initial collision with a DFD vehicle, Goodson alleges, at most, that a DFD vehicle negligently hit him. But negligence cannot support a § 1983 claim. *See*, *e.g.*, *Russell v. Dallas County Jail*, 2019 WL 5790515, at *5 (N.D. Tex. Oct. 11, 2019) ("Plaintiff's allegations of negligence are insufficient to impose liability under § 1983.") (collecting cases), *rec. accepted* 2019 WL 5789420 (N.D. Tex. Nov. 6, 2019). As for the claims against Methodist Hospital, there are no allegations that this entity acted under color of state law. Because state action is a prerequisite to liability under § 1983, Goodson's § 1983 claims against Methodist Hospital should be dismissed. *See*, *e.g.*, *Boyd v. Sutton*, 2022 WL 2980693, at *4 (N.D. Miss. July 27, 2022) ("Relief under 42 U.S.C. § 1983 is only available to preserve a plaintiff's federal constitutional or statutory rights against a defendant acting *under color of*

---

Goodson's conjectural fear of retaliation cannot justify equitable tolling. *See*, *e.g.*, *Wershe v. City of Detroit, Michigan*, 112 F.4th 357, 369 (6th Cir. 2024) ("Many of Wershe's other allegations amount to a sweeping fear that someone in the justice system would retaliate against him for bringing any legal action. However, such a generalized fear is insufficient to warrant equitable tolling.") (citing *Huff v. Neal*, 555 F. App'x 289, 296 (5th Cir. 2014)) (further citations omitted); *see also Pratt v. Stop & Shop Supermarket Co.*, 2011 WL 579152, at *5 (E.D.N.Y. Feb. 9, 2011) ("Moreover, even if fear of retaliation could provide grounds for equitable tolling, plaintiff has failed to make such a showing in this case beyond his conclusory assertion.").

*state law*. See 42 U.S.C. § 1983. Thus, a § 1983 plaintiff may only pursue his civil rights claims against someone who is a state actor.") (emphasis in original).

In sum, Goodson's claims stemming from his initial collision with a DFD vehicle and his subsequent medical care at Methodist Hospital are time-barred and substantively meritless and should be dismissed with prejudice.

2.  Goodson's federal claims stemming from his incarceration are meritless.

Liberally construing Goodson's allegations, he claims that unidentified correctional officers at the Lew Sterrett Jail acted with deliberate indifference to his safety by placing him in a violent unit where he could not defend himself, and deliberate indifference to his serious medical needs by failing to provide him with medical care after he arrived in the prison. Amend. Compl. at 20-21. He alleges that unidentified correctional officers failed to intervene to stop "a known violation of [his] civil rights." *Id.* at 21. He also alleges that he was denied "necessary neurological and psychiatric accommodations post injury" in violation of the Americans with Disabilities Act (ADA)/Rehabilitation Act of 1973. *Id.* at 24.

Goodson's constitutional claims are time-barred. Goodson alleges no latent injury in relation to these claims; he knew, or had reason to know, of the alleged failure to protect, medical indifference, and failure to intervene when he was incarcerated in 2018. But he did not file this suit until April 2025.

Alternatively, these claims are substantively meritless. As for the failure-to-protect claim, the Fourteenth Amendment vests pretrial detainees with the constitutional right to have the essentials of their well-being tended to while in

state custody, including their basic right to be protected. *See, e.g., Congious by and through Hammond v. City of Fort Worth*, 690 F. Supp. 3d 571, 585 (N.D. Tex. 2023). But "[a] plaintiff must . . . demonstrate actual physical harm resulting from the alleged improper conduct by prison officials." *Johnson v. Burnly*, 2018 WL 1341727, at *3 (S.D. Miss. Feb. 9, 2018). "Absent a showing that other inmates harmed [the plaintiff], there is no factual basis for a failure to protect claim." *Walzier v. McMullen*, 333 F. App'x 848, 851 (5th Cir. 2009). Here, Goodson fails to allege any physical injury or harm because he was placed in a "violent" unit, so his failure-to-protect claim should be dismissed.

As for the medical indifference claim, the Fourteenth Amendment protects an arrestee or pre-trial detainee's right "not to have their serious medical needs met with deliberate indifference on the part of . . . officials." *Brooks v. Taylor County*, 592 F. Supp. 3d 550, 556 (N.D. Tex. 2022) (citing *Thomson v. Upshur County*, 245 F.3d 447, 457 (5th Cir. 2001)). "Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001). A plaintiff must show that (1) the official was aware of facts that give rise to an inference that a substantial risk of serious harm existed, and (2) the official drew this inference and disregarded the risk. *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (citing *Domino*, 239 F.3d at 755).

Goodson has not plausibly alleged facts from which the Court could infer that any correctional officer knew that he faced a substantial risk of serious harm and disregarded it. He alleges that he was "blind in his left eye," deaf in his left ear,

"barely able to walk or speak clearly due to physical trauma and disorientation," and that some correctional officers remarked on his condition. Amend. Compl. at 20. But Goodson had recently been discharged from a hospital, and the correctional officers could have reasonably assumed he would not have been discharged if he was facing any kind of serious medical issue.

In sum, Goodson's medical indifference claim—in addition to being untimely—is meritless, and should be dismissed.

And because Goodson fails to allege any underlying constitutional violation in relation to his time in the Lew Sterrett Jail, he necessarily fails to state a claim that any correctional officer failed to intervene to protect his constitutional rights while he was there. *See*, *e.g.*, *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005) ("In order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation . . . .").

Finally, Goodson's ADA/Rehabilitation Act claim for the jail's alleged denial of accommodations is untimely and should be dismissed. This claim arises under Title II of the ADA and Section 504 of the Rehabilitation Act. *See*, *e.g.*, *Cleveland v. Gautreaux*, 198 F. Supp. 3d 717, 736 (M.D. La. 2016) (citing *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209-10 (1998) (further citation omitted)). "'Based on [] guidance from the Supreme Court most circuits that have adopted a statute of limitations for ADA or Rehabilitation Act claims have looked to the state's limitations period for personal injury actions.'" *Eber v. Harris County Hosp. Dist.*, 130 F. Supp. 2d 847, 869 (S.D. Tex. 2001) (quoting *Everett v. Cobb County Sch.*

*Dist.*, 138 F.3d 1407, 1409 (11th Cir. 1998)). In Texas, "[t]he general statutory limitation period for personal injury claims is two years, beginning the day after the cause of action accrues." *Grace v. Colorito*, 4 S.W.3d 765, 769 (Tex. App.—Austin 1999, pet. denied). Federal law governs when the cause of action accrues. *Eber*, 130 F. Supp. 2d at 870 (citing *Burns v. Harris County Bail Bond Bd.*, 139 F.3d 513, 518 (5th Cir. 1998)). As with the § 1983 claims, under federal law, a Title II ADA claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. *Id.*

Here, Goodson does not allege any latent injury from the alleged failure to accommodate. Thus, he knew or had reason to know about any injury in 2018, yet he did not file this suit until April 2025. So his ADA/Rehabilitation Act claim, filed in April 2025, is untimely and should be dismissed.

3. <u>Goodson's federal claims that imply the invalidity of his conviction are barred by *Heck v. Humphrey*.</u>

Goodson claims that his state criminal proceedings in which he pleaded guilty to intoxication assault were tainted in several respects.

In *Heck v. Humphrey*, the Supreme Court held that "a claim that, in effect, attacks the constitutionality of a conviction or imprisonment is not cognizable under 42 U.S.C. § 1983 and does not accrue until that conviction or sentence has been 'reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus.'" *Darnell v. Sabo*, 2022 WL 16577866, at *4 (N.D. Tex. Nov. 1, 2022) (citing 512 U.S. 477, 486-87 (1994); *Wells*

*v. Bonner,* 45 F.3d 90, 94 (5th Cir. 1995)). Put differently, unless the conviction has been invalidated, *Heck* bars claims under § 1983 if "success on the claim would necessarily imply that a prior conviction or sentence is invalid." *Aucoin v. Cupil,* 958 F.3d 379, 382 (5th Cir. 2020). "Although the *Heck* opinion involved a bar to claims for monetary damages, a dismissal of a claim for injunctive relief and for declaratory relief may also be made pursuant to *Heck*." *Id.* (citing *Edwards v. Balisok,* 520 U.S. 641, 648 (1997) (extending *Heck* to claims for declaratory relief that necessarily would imply the invalidity of punishment); *Clarke v. Stadler,* 154 F.3d 186, 190-91 (5th Cir. 1988) (en banc)) (holding that a claim for prospective injunctive relief that would imply the invalidity of a prisoner's conviction may be dismissed without prejudice subject to the rule of *Heck v. Humphrey*).

Here, Goodson alleges that officers withdrew blood in violation of the Fourth Amendment, and the results were used to support his criminal charge. Amend. Compl. at 15. He alleges that officers interrogated him when he was incapacitated and without advising him of his *Miranda* rights. *Id.* He alleges that his original attorney improperly withdrew because of a fabricated conflict of interest, and his replacement attorney was ineffective. *Id.* at 26. He alleges that his counsel's withdrawal was part of a conspiracy that harmed his ability to defend himself. *Id.* at 28. He alleges that, after he pleaded guilty, his guilty plea paperwork was tampered with to increase the length of his community supervision without his consent and in violation of his due process rights and the terms of the plea agreement. *Id.* at 41-42. Finally, he alleges that an attorney for another individual,

Harold Leroy, encouraged Leroy to withhold evidence that was exculpatory for Goodson. Compl. at 4.

All these claims necessarily imply the invalidity of Goodson's conviction, which Goodson has not alleged has been invalidated. Thus, *Heck* bars these claims until Goodson's conviction is invalidated. *See*, *e.g.*, *Bryant v. Reed*, 2007 WL 701143, at \*2 (E.D. La. Mar. 1, 2007) ("Because a finding that the plea agreement was breached would render his conviction invalid, a claim for monetary damages for such a breach is currently barred by *Heck v. Humphrey* . . . .") (citation omitted); *Mouton v. Louisiana*, 547 F. App'x 502, 502-03 (5th Cir. 2013) (per curiam) ("Mouton's arguments regarding ineffective assistance, prosecutorial misconduct, trial court error, judicial misconduct, juror misconduct, and wrongful incarceration are all barred by *Heck* because these claims are directly related to the validity of his conviction.") (citation omitted); *Hall v. Lorenz*, 2002 WL 31049457 (5th Cir. 2002) (holding that *Heck* barred plaintiff's illegal search and seizure claim because, if successful, it would undermine the validity of plaintiff's criminal conviction); *Ortiz v. County of Los Angeles*, 2013 WL 2371181, at \*4 (C.D. Cal. May 29, 2013) (civil rights claims against police officers for not giving *Miranda* warnings barred by *Heck*).

4. <u>Goodson's allegations against the City of Allen are too conclusory to state a federal claim</u>.

Goodson alleges that City of Allen police officers surveilled him and "stopped [him] under false pretenses to reset probation and prevent legal retaliation." Compl. at 7.

The Court liberally construes these allegations as attempting to plead a false arrest claim. "[T]o state a § 1983 claim for false arrest/false imprisonment, [Plaintiff] must plausibly allege that [the officer] 'did not have probable cause to arrest him.'" *Arnold v. Williams*, 979 F.3d 262, 269 (5th Cir. 2020) (quoting *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655 (5th Cir. 2004)). "A warrantless arrest must be based on 'probable cause.' Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Resendiz v. Miller*, 203 F.3d 902, 903 (5th Cir. 2000). "Because probable cause is an objective standard, an arrest is lawful if the officer had probable cause to arrest for any offense, not just the offense stated at the time of arrest or booking." *District of Columbia v. Wesby*, 538 U.S. 48, 54 n. 2 (2018).

Goodson fails to allege any facts to establish that the City of Allen police officers lacked probable cause to arrest him, so his claim against the City of Allen is meritless and should be dismissed.[4]

---

[4] To the extent that Goodson is asserting a First Amendment retaliatory arrest claim, the claim lacks merit because he fails to allege the lack of probable cause for his arrest. *See*, *e.g.*, *Nieves v. Bartlett*, 587 U.S. 391, 408 (2019). Nor has he plausibly alleged that he was engaged in protected activity that was a substantial motivation for his arrest. *See Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).

5.  "Quasi-judicial immunity" bars any federal claims that Goodson is trying
to allege against Clerk's Office employees.

Goodson alleges that the Clerk's Office "tamper[ed]" with his complaint by
using a stamping device that "failed to reflect the correct 3:2025cv00816
formatting." Amend. Compl. at 49. Goodson claims that these allegations support
"RICO and civil rights claims, showing deliberate targeting, document tampering,
and malicious interference in judicial process." *Id.* at 50.

This claim is meritless. Goodson has not shown that Clerk's Office used an
incorrect number—25-cv-00816 and 25-cv-816 are interchangeable on the Court's
CM/ECF docketing system—or that he suffered any prejudice. Goodson has been
able to file numerous documents without issue.

Further, any claim against Clerk's Office employees for inaccurately
stamping his docket sheet number is barred by absolute quasi-judicial immunity.
Judges are immune from suit for damages resulting from any judicial act, unless
performed in "the clear absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9,
11-12 (1991). And absolute immunity also extends to others who perform judicial
functions in accordance with a court directive, including court clerks. *See Clay v.
Allen*, 242 F.3d 679, 682 (5th Cir. 2001). Court clerks have absolute immunity from
actions for damages arising for actions they are specifically required to perform by
court order or judicial discretion and qualified immunity for routine duties not
explicitly commanded by court decree or judicial instruction. *Id.*

Here, Goodson's claim against Clerk's Office employees is based on
performance of functions closely associated with the judicial process—filing court

documents—so the Clerk's Office employees are immune from suit. *See Balistreri-Amrhein v. Verrilli*, 2016 WL 11191119, at *8-9 (E.D. Tex. Oct. 7, 2016) (recommending dismissal of claims against federal court staff and clerks for filing motions incorrectly, refusing to file or misplacing documents, charging court costs and filing fees, and failing to provide the plaintiff notice of orders, as barred by absolute immunity); *see also Lewis v. Roxbury Dist. Ct.*, 2013 WL 4854117, at *2 (D. Mass. Sept. 10, 2013) (holding that clerk who failed to record plaintiff's case accurately, ignored plaintiff's request to send him copies of all docket entries, and lied to plaintiff's wife about sending such entries had absolute quasi-judicial immunity because "[t]hose duties arise directly from the Clerk's role in supporting the adjudication of cases").

6.  Goodson fails to state a conspiracy claim under 42 U.S.C. § 1985.

Goodson alleges that, from the time he collided with a DFD firetruck, to the time the Clerk of this Court stamped a number on his complaint that he believes was incorrect, the defendants have participated in a conspiracy to violate his civil rights under 42 U.S.C. § 1985. *See generally* Compl; Amend. Compl.

Goodson fails to state a civil conspiracy claim under 42 U.S.C. § 1985. First, this claim, as much as it alleges that the conspiracy touched on Goodson's underlying criminal proceedings, is barred by *Heck* because its success would necessarily imply the invalidity of Goodson's conviction, which has not been invalidated. Second, a conspiracy under § 1985 requires a predicate constitutional violation. *See Jackson v. Pierre*, 810 F. App'x 276, 281 (5th Cir. 2020). As

explained, Goodson has not alleged a predicate constitutional violation, so he necessarily fails to allege a § 1985 conspiracy claim.

7. <u>The Court should decline to exercise supplemental jurisdiction over Goodson's state-law claims.</u>

Goodson alleges state-law claims for negligence (Amend. Compl. at 12, 18), forgery and tampering with a government record under the Texas Penal Code (Amend. Compl. at 42), legal malpractice and fraud (Compl. at 5), defamation (Compl. at 5), intentional infliction of emotional distress (Compl. at 6), and false imprisonment and abuse of process (Compl. at 5). There is no independent jurisdictional basis for these claims, so the Court can only exercise supplemental jurisdiction over them under 28 U.S.C. § 1367.

Under 28 U.S.C. § 1367(c), district courts may decline to exercise supplemental jurisdiction over a claim if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it had original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." "In making its determination as to whether to exercise supplemental jurisdiction, 'the court is guided by the . . . statutory factors as well as the common law factors of judicial economy, convenience, fairness, and comity.'" *Robinson v. Webster Cty., Miss.*, 2020 WL 1180422, at *11 (N.D. Miss. Mar. 11, 2020), *aff'd,* 825 F. App'x 192 (5th Cir. 2020) (per curiam) (citation omitted).

"As a general rule, a federal court should decline to exercise jurisdiction over pendant state claims when all federal claims are disposed of prior to trial." *Brim v. ExxonMobil Pipeline Co.*, 213 F. App'x 303, 305 (5th Cir. 2007) (per curiam) (citations omitted). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Parker & Parsley Petroleum Co. v. Dresser Ind.*, 972 F.2d 580, 586 (5th Cir. 1992) (citation omitted).

Here, the Court should decline to exercise supplemental jurisdiction over any state-law claims. The Court has recommended dismissal of all of Goodson's federal claims, which weighs against retaining the state claims. Relatedly, given the dismissal of the federal claims, the state claims predominate. Finally, judicial economy, convenience, fairness, and comity also support declining jurisdiction because this case is still at the screening stage, no trial date has been set, and there is no scheduling order in place.

8.  Goodson's pending motions should be denied.

Goodson has filed several motions seeking, among things, a preliminary injunction; a protective order to "prevent retaliation, harassment, and intimidation; a "reassignment" of this case to an Article III Judge[5]; exemption from

_____

[5] Goodson's challenge to the referral of this matter to a United States magistrate judge is frivolous. Referrals to United States magistrate judges are authorized by

PACER fees; the appointment of a court-funded investigator or special master; a scheduling conference; and the appointment of the U.S. Marshal for service of process. *See* ECF Nos. 6, 7, 8, 25, 29, 30, 31, 32, 33, 34, 36-45.

Because Goodson's federal claims fail to survive judicial screening and the Court has recommended declining supplemental jurisdiction over the state-law claims, these motions should be denied as moot.

Goodson also moved for leave to file a second amended complaint (ECF No. 49). According to Goodson, the proposed second amended complaint "does not seek to add any new defendant or cause of action," but includes additional facts related to "(1) the City of Allen police department's unlawful targeting, stop, and arrest of [Goodson], and (2) the beating and unconstitutional treatment [Goodson] endured at the Dallas County Lew Sterrett Detention Center." Mot. at 1 (ECF No. 49).

"Under Rule 15(a), 'leave to amend shall be freely given when justice so requires,' and should be granted absent some justification for refusal." *U.S. ex rel. Willard v. Humana Health Plan of Texas, Inc.*, 336 F.3d 375, 386 (5th Cir. 2023) (citation omitted). But a district court can deny leave to amend if the proposed amendment would be futile. *Stripling v. Jordan Prod. Co., L.L.C.*, 234 F.3d 863,

---

28 U.S.C. § 636 and are constitutional. *See*, *e.g.*, *Escudero v. Jordan*, 2019 WL 4463265, at *2 (E.D. Tex. Sept. 18, 2019) (citing *Bowman v. Bordenkircher*, 522 F.2d 209 (4th Cir. 1975); *Corbett v. United States*, 2014 WL 1783599 (S.D.W. Va. May 5, 2014)). Goodson has lost no right to have an Article III Judge hear his case, as he can object to the undersigned's recommendations and orders. *See* 28 U.S.C. § 636(b)(1).

873 (5th Cir. 2000). An amendment is futile when the amended complaint fails to state a claim upon which relief can be granted applying the "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.*

Here, Goodson's proposed amendments would be futile. Starting with the false and retaliatory arrest claims stemming from his arrest by City of Allen police officers, Goodson's proposed second amended complaint alleges that, at the time of the arrest, he was working as a mover and that he and his employer were operating a moving truck. Proposed Second Amend. Compl. at 57. He alleges in conclusory fashion that he and his "employer were unlawfully targeted, pulled over without any lawful basis, and subsequently arrested by Allen Police." *Id.* He alleges that video evidence shows that "supervisory officers" "pre-instructed" their subordinates to pull over the moving truck when it was spotted, "with no lawful cause or articulable suspicion." *Id.* He notes that the district attorney dropped Goodson's case "almost immediately upon evaluation." *Id.* at 58.

Even with those added details, the proposed second amended complaint still does not allege a plausible false arrest or retaliatory arrest claim against the City of Allen. Goodson's conclusory assertion that the officers lacked probable cause—without corresponding factual detail about the relevant circumstances of the arrest and the facts confronting the officers—is not enough to establish a lack of probable cause—an element of both false and retaliatory arrest claims. *See, e.g., Barra v. Boudreaux*, 2020 WL 1695124, at *4 (W.D. La. Apr. 6, 2020) ("Barra's unlawful arrest allegations fail to state a claim because they do not include facts supporting

his conclusory statement that the arrest was 'unlawful,' and the Complaint's description of the arrest and Barra's prior encounters with the police do not demonstrate a lack of probable cause."); *see also Torns v. City of Jackson*, 622 F. App'x 414, 417 (5th Cir. 2015) (false arrest claims "require[] an inquiry into the specific situation confronting the public officials") (citing *Anderson v. Creighton*, 483 U.S. 635 (1987)).

Further, as to a retaliatory arrest claim in particular, Goodson fails to plausibly allege that he was engaged in some kind of protected activity that substantially motivated the adverse actions against him. *See Keenan*, 290 F.3d at 258. He claims that the arrest was connected to his "efforts to assert his rights" (ECF No. 50 at 58) but he does not explain what "efforts to assert his rights" that he is talking about, and it is not apparent to the Court, as the arrest occurred *before* Goodson filed this action.

Finally, as for Goodson's excessive force claim, the proposed second amended complaint alleges that, on an unspecified date, he was transferred to Lew Sterrett Jail after a "probation-related hearing," where unidentified correctional officers "commenced a coordinated beating, repeatedly kicking and punching [him], while he remained handcuffed and unable to defend himself." Proposed Second Amended Compl. at 60. He alleges that the assault aggravated "existing neurological vulnerabilities" from a prior "traumatic brain injury from unrelated civil rights violations." *Id.* at 61.

Even if these allegations could state an excessive force claim, Goodson has sued no individual correctional officer. He has only sued the City of Dallas. And under § 1983, municipalities like the City of Dallas are not liable for the unconstitutional actions of their employees under the doctrine of *respondeat superior*. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, a plaintiff seeking relief against a municipal defendant such as a city must establish that the allegedly unconstitutional conduct is "directly attributable to the municipality through some sort of official action or imprimatur." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). Municipal liability requires proof of three elements: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)).

Goodson's proposed second amended complaint does not plausibly allege any of those elements. He does not identify a City of Dallas policy or custom—of which a policymaker could be charged with actual or constructive knowledge—that led to the alleged excessive force against him.

In sum, Goodson's proposed amendments would be futile, so the Court should deny his motion for leave to file a second amended complaint, along with his other motions.

23

## Leave to Amend

Ordinarily, a *pro se* plaintiff should be granted leave to amend his complaint before dismissal. *Brewster v. Dretke,* 587 F.3d 764, 767-68 (5th Cir. 2009). Leave to amend is not necessary, however, when the plaintiff has already pleaded his best case. *Wiggins v. La. State Univ.—Health Care Servs. Div.,* 710 F. App'x 625, 627 (5th Cir. 2017) (per curiam) (citations omitted). Here, Goodson has already filed a detailed amended complaint, as well as a motion to file a second one with additional allegations. Thus, it appears that, at this point, Goodson has pleaded his best case. At any rate, the chance to object to this recommendation (explained below), gives Goodson yet another chance to plead his best case by explaining how he could amend his complaint to allege a plausible federal claim. But unless he shows the Court that he could amend to allege a plausible claim, he is not entitled to further leave to amend.

## Recommendation

The Court should dismiss Goodson's federal claims that imply the invalidity of his state criminal conviction with prejudice to their being asserted again until the conditions in *Heck v. Humphrey,* 512 U.S. 477 (1994) are met, dismiss his remaining federal claims with prejudice, dismiss his state-law claims without prejudice to his ability to assert them in state court, and deny his pending motions.

SO RECOMMENDED.

May 5, 2025.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).